IN THE
# United States District Court
# for the Northern District of California



Robert F. Peckham Federal Building
& United States Courthouse
280 South 1st Street, Room 2112
San Jose, CA 95113
408-535-5363

| | | |
|---|---|---|
| ANDREW U. D. STRAW, | ) | Case No. CV24-08625 |
| *Plaintiff,* | ) | |
| | ) | Hon. |
| v. | ) | Judge Presiding |
| | ) | |
| FACEBOOK, | ) | SUSPENSION OF LAWYER ACCT. |
| *Defendant.* | ) | COMPLAINT |
| | ) | JURY TRIAL NOT DEMANDED |

## COMPLAINT

I, *plaintiff* Andrew U. D. Straw make this COMPLAINT to obtain justice for defendant's suspending my longstanding Facebook.com page for having complained about the discrimination of my former employer, the Indiana Supreme Court, and other courts, and disability rights generally. A Facebook page for a law firm is a very sensitive issue and Facebook should not be oppressing such businesses across state lines, in this case affecting any client I may have in the Fourth Circuit U.S. Court of Appeals, given I have had an active law license there for 25 years without any sanction. Thus, Facebook.com took sides against me and caused me permanent injury to my emotions and my prospective business relationships across state lines using the wires, and thus representing tortious interference with business relationships between myself and millions of people, and I thus COMPLAIN:

## PRELIMINARY MATTERS

1. My Facebook page that is the subject of this COMPLAINT appears at the following URL when not suspended: https://web.facebook.com/courtintegrity

2. I ask separately for *In Forma Pauperis* status and if this is granted, I also request service to Facebook in this U.S. District Court under FRCP Rule 4(c)(3). My application for *IFP* is included with this filing. Summons form is attached.

3. I am a U.S. citizen physically overseas in the Philippines. I request **E-Notice** of all filings and **will file electronically using CM/ECF** per the rules of this Court.

4. My email address for both is: andrew@andrewstraw.com

5. I am in fact an attorney licensed at the U.S. Court of Appeals for the 4th Circuit since June 1999.

6. My coversheet is included.

## FACTS

7. I am mentally disabled due to Camp LeJeune poisoning as a child. It is indisputable and adjudicated that I was born at that U.S. Marine Corps base during the toxic water time period, 1969. See:

8. *Straw v. Wilkie*, 20-2090, 843 F. App'x 263 (Fed. Cir. 1/15/2021)

9. Moreover, I am physically disabled from a reckless driver crossing into my lane and hitting me head on as I drove to the Indiana Supreme Court to work. This broke both my legs, my pelvis, and skull. *See, Straw v. LinkedIn*, 5:22-cv-7718


08001.000001.10.19.00.212055824

(N.D. Cal. 2023) (Settled). (Dkt. 22-1 ff) LinkedIn had a similar policy of shutting down my communications about courts that discriminate based on disability. That litigation ended with LinkedIn agreeing to pay me and reinstate my account. I expect something similar here. Facebook should remove the suspension and make my law firm account very difficult to interfere with since I have not violated any community standard in exercising my First Amendment rights as a business owner and federal lawyer.

10. My mental disabilities include bipolar disorder, *inter alia*. Bipolar is an illness of the emotions, and as such I feel mental and physical pain and frustration to a much greater degree than a normal person, especially without treatment.

11. I claim the benefit of "eggshell skull" doctrine to demonstrate my damages using my reality rather than someone else's. This is a tort case, after all.

12. I have alleged that Indiana imposed illegal conditions on my license in 2002 and the evidence of this was in a consent agreement, which I placed online at http://consent.andrewstraw.com

13. The Indiana State Board of Law Examiners dropped its conditions in 2006 after I invoked *Tennessee v. Lane*, 541 U.S. 509, 511, 525, 531 (2004), showing that I have prevailed against the Indiana Supreme Court and should have had that status since then. An **ADA victor over a state supreme court.**

14. I have a currently pending petition to restore my Indiana law license, which I claim was illegally suspended as an implementation of that state's ban on all

08001.000001.11.19.00.212055824

disabled people being lawyers. I put Indiana's rule and an explanation of it on my website at http://ban.andrewstraw.com

15. These are civil rights discussions on my Facebook page. They are mild compared to the flames of many others on the Internet, but perhaps sensitive because I am demanding civil and human rights change from *courts*.

16. I have also written to U.S. Senator Whitehouse on this subject. My struggles are not just mine alone because I am a civil rights leader for people with disabilities. The ABA called me a political advocate for persons with disabilities and made a profile of me on the ABA website:

https://www.americanbar.org/groups/diversity/disabilityrights/initiatives_awards/spotlight/straw_a/

17. That spotlight award is for lawyers with disabilities who are an asset to the profession of law. The ABA has been featuring disabled lawyers for many years and I was the featured attorney for **January 2014**.

18. Facebook saw that I was criticizing the Indiana Supreme Court as a lawyer on my business Facebook page and without any hesitation, suspended my page without any evidence provided that I violated any policy with my page and its posts. That was happening without good reasons since I do not abuse my account but instead use it as a whistleblower.

19. Like most of my connections, I have a strong interest in disability human and civil rights and I make very normal comments and posts on those subjects.

20. I have thousands of connections on LinkedIn and hundreds of followers on my Facebook page at issue here across several states and even foreign countries.

4

08001.000001.12.19.00.212055824

21. Facebook shows that I had violated some policy or rule and because I was posting what I was, on court reforms, my account is suspended. It is suspended still as of today, **November 23, 2024**.

22. That stripped me of the ability to fellowship with others of like mind and comment to them about my own struggles on **my FB page for my law practice**.

23. That stripped me of clients targeted to me and my resume by the Facebook system.

24. All of that is suspended now.

25. Given the content of my page, it can only be considered an attack on my opposition to ADA violations and stifling my career yet again, just like the Indiana Supreme Court did in illegally suspending me, as the Virginia State Bar noted (*Straw v. LinkedIn*, **Dkt. 22-21**) and my national property expert (*Straw v. LinkedIn*, **Dkt. 22-22**).

26. *Straw v. Indiana*, 53C01-2110-PL-2081 (Monroe Cty. Cir. Ct. 2022) (5 law licenses taken without compensation in violation of Indiana Bill of Rights, Article 1, Sec. 21) (DENIED; DENIED ON APPEAL). Indiana has also stripped me of my property rights in those 5 Midwest law licenses.

27. Thus, there are several violations conflated together here but the main impact is on my ability to communicate with disabled clients who may wish to have my services in South Carolina, North Carolina, Virginia, West Virginia, and Maryland due to my U.S. Court of Appeals license in the Fourth Circuit.

08001.000001.13.19.00.212055824

Facebook injured me using the wires across several states and foreign countries since I live in the Philippines now.

### SIGNIFICANCE OF FACEBOOK ATTACK IN CONTEXT

28. My former employer was the Indiana Supreme Court and I served the Chief Justice and every court and judge in the State of Indiana as the judicial branch statistical analyst. I was disabled driving to that state supreme court to work and I have experienced court disability discrimination continuously since that car crash in 2001. When I complained about ADA violations, the state supreme court began a disciplinary process that imposed nearly **8 years of suspension on me with a 180 day *actual* suspension in violation of that court's own rules, which do not allow such as suspension, especially with NO crime and NO dishonest act alleged at all**. I did not commit any crime in making my ADA complaints or in attempting to get ADA justice in federal courts. I was accused of no crime. I was accused of no dishonest act. I had no disciplinary history *at all* at that point in Indiana.

29. Further, I had no *bona fide* hearing before I lost my Indiana law license and no hearings at all before losing my 4 U.S. District Court licenses. *Straw v. U.S. District Court, et. al.*, 17-2523 (7th Cir. 2017).

30. My mitigating facts, including the lack of crime or any dishonesty, were **100% ignored**.

31. My former employer took the bare words of "frivolous" from a couple of federal judges who said those words **with no sanction attached** and then Indiana

08001.000001.14.19.00.212055824

applied **Rule 3.1** to generate a long suspension that dwarfed what the Disciplinary Commission (60 days suspension) and my Indiana hearing officer (brief suspension) said was appropriate.

32. In reality, this Rule 3.1 attack was an end run around the reciprocal discipline rule's limits. It violated federalism and served as collateral attacks so Indiana could get the result it wanted from the federal courts that imposed no sanction. A court cannot impose reciprocal discipline where there was **NO DISCIPLINE originally**, but my former employer wanted me to have a long suspension for **criticizing THEM**. SO, they dug around and found Rule 3.1, which has never been used this way *anywhere*.

33. My nearly 8 years of suspension were NO suspension in 4 federal courts, blown up to nearly 8 years of reciprocal suspension and expanded to 4 other courts, who imposed the full suspension when <u>they did not impose any suspension in the original cases</u>. NO WONDER they did not want any hearing to take place.

34. The Virginia State Bar held a 5-judge panel hearing following due process and denounced the Indiana discipline as. "**having all the grace and charm of a drive-by shooting.**" *Straw v. LinkedIn*, Dkt. 22-21.

35. The Virginia State Bar said that I proved by <u>clear and convincing evidence</u> that <u>**I had not violated any ethical rule**</u> by using federal courts for ADA relief without success and would not have received any sanction for the exact same actions if they were done in Virginia.

7

## MY POSITION

36. Facebook by its employees stripped me of a valuable professional networking service for no good reason, not even the community standards because no evidence of violation was provided.

37. Facebook also sided with Indiana's ban by punishing me for talking about it and opposing the 2024 retention of the justices who imposed it.

38. Facebook thus violated my rights and assisted my former employer in its discrimination and firing of me and suspension of my license for disability and competence reasons.

39. This impacts my Fourth Circuit law practice, stifling it completely by suspending my page.

## COUNT I: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

40. Per the facts recited above, Facebook has suspended **my law firm business page** for opposing the discrimination of a state supreme court that was my employer.

41. This is a tort against my business relationships because Facebook is interfering with my employment, past, present, and future, by my law firm's business page on Facebook just like Indiana bans all disabled lawyers. Ind. R. Adm. & Disc. R. 23, Sec. 2(c) & 3(b).

42. Facebook is assisting the Indiana Supreme Court, which is covered by ADA Title II under *Tennessee v. Lane*, to hurt me. That discrimination is the core of the tort here. It is the reason for the suspension because none other is provided.

08001.000001.16.19.00.212055824

43. Facebook is retaliating against my ADA reform advocacy and opposition to the Indiana ban on disabled persons being lawyers. Mine is a systemic attack because banning disabled lawyers infects the whole legal system, top to bottom. Attacking me for demanding change is a retaliation and interference with my advocacy. My page is meant to connect clients of like mind with myself. As much as my work is systemic law reform, Facebook's attack and apparent permanent suspension on me using that service is also systemic.

44. Employment discrimination is prohibited. 28 C.F.R. § 35.140

45. The ADA Title II regulations demonstrate that private entities must not assist public entities to discriminate or harm disabled people.

> 28 C.F.R. § 35.134 Retaliation or coercion
> (a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.
>
> (b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

46. https://www.ada.gov/law-and-regs/title-ii-2010-regulations/

47. Suspending my law firm page for talking about a state's ADA violations must be considered a private entity cooperating with Indiana and acting as a state agent, thus violating the First Amendment by oppressing my human rights views about Indiana.

48. **BUSINESS TORT INTERFERENCE DAMAGES: $5,000,000**

9

## PRAYER FOR RELIEF

49. I pray this Court will consider the facts and law presented above, find that **Facebook has violated my rights as lawyer and business owner not to experience retaliation for my advocacy and attempts to educate clients and the public across state lines** in a deliberate fashion without remorse or compassion. **$5,000,000** is my prayer. I ask that Facebook be ORDERED not to interfere with my use of its service anymore and a permanent injunction should be imposed to that effect in the interest of justice. I choose this damages amount because ADA Title II damages have been awarded in the past at the million dollar level in *Barnes v. Gorman*, 536 U.S. 181 (2002). I ask any and all other relief, including attorney fees should I obtain counsel, appropriate to the Court.

## VENUE & JURISDICTION

50. This Court has jurisdiction under 28 U.S.C. § 1332 as this is a federal diversity matter under the business tort law of the State of California and the amount is well above the $75,000 jurisdictional limit.

51. The Northern District of California thus is an appropriate venue under 28 U.S.C. § 1391(b)(2) because Facebook is the defendant and the actions giving rise to this lawsuit happened online, while Facebook's headquarters are in Menlo Park, California, in the federal district where this Court is located.

08001.000001.18.19.00.212055824

I, Andrew U. D. Straw, verify that the above factual contentions and statements are true and correct to the best of my knowledge, information, and belief, on penalty of perjury. Signed: **November 23, 2024.**

Respectfully,

*[signature]*

s/ ANDREW U. D. STRAW
MAILING ADDRESS:
9169 W State St #690
Garden City, ID. 83714
Telephone: (847) 807-5237
andrew@andrewstraw.com

## CERTIFICATE OF SERVICE

I, Andrew U. D. Straw, certify that I filed the above **COMPLAINT** AND **COVERSHEET** AND *IFP* **APPLICATION** with the Clerk of the U.S. District Court for the Northern District of California by U.S. Mail, First Class and postage prepaid on **November 23, 2024,** at the address at the top of this document. The Court is requested to enter these documents, assign a case number, and determine *IFP* so service can be done under FRCP Rule 4(c)(3).

Respectfully submitted,

*[signature]*

s/ ANDREW U. D. STRAW
9169 W State St #690
Garden City, ID. 83714
Telephone: (847) 807-5237
andrew@andrewstraw.com

11

08001.000001.19.19.03.212055824