UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW U.D. STRAW,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK,<br><br>Defendant. | Case No. 24-cv-08625-PHK<br><br>**ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE PURSUANT TO MANDATORY SCREENING [28 U.S.C. § 1915(e)(2)(B)]**<br><br>Re: Dkt. 1 |

*Pro se* Plaintiff Andrew U.D. Straw brings this action against Defendant Facebook "to obtain justice" in connection with the suspension of Plaintiff's "longstanding Facebook.com page." *See* Dkt. 1. The Court previously granted Plaintiff's application to proceed *in forma pauperis* ("IFP"), in accordance with 28 U.S.C. § 1915(a). [Dkt. 28]. The Court now analyzes whether Plaintiff's Complaint satisfies the mandatory screening requirements of 28 U.S.C. § 1915(e)(2)(B).

**LEGAL STANDARD**

A complaint filed pursuant to the IFP provisions of § 1915(a) is subject to mandatory review by the Court and *sua sponte* dismissal if the Court determines the complaint is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *see Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits, but *requires* a district court to dismiss an [IFP] complaint that fails to state a claim.") (emphasis added); *see also Chavez v. Robinson*, 817

F.3d 1162, 1167-68 (9th Cir. 2016) (noting that § 1915(e)(2)(B) "mandates dismissal—even if dismissal comes before the defendants are served").  Congress enacted this safeguard because "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

If the Court dismisses a complaint pursuant to § 1915(e)(2)(B), the plaintiff may still file the same complaint by paying the filing fee because such dismissal is not on the merits; rather, the dismissal is an exercise of the Court's discretion under the IFP statute.  *Biesenbach v. Does 1-3*, No. 21-cv-08091-DMR, 2022 WL 204358, at *2 (N.D. Cal. Jan. 24, 2022) (citing *Denton*, 504 U.S. at 32).

Plaintiff proceeds in this matter *pro se*.  Ordinarily, in undertaking the mandatory screening of a *pro se* plaintiff's complaint, the Court construes the allegations liberally and affords the plaintiff the "benefit of any doubt."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted).  However, Plaintiff is, himself, an attorney.  [Dkt. 1 at ¶ 3 ("I am in fact an attorney licensed at the U.S. Court of Appeals for the 4th Circuit since June 1999.")].  For that reason, the Court interprets the allegations in Plaintiff's Complaint "without deference," the same as in a counseled case.  *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023).  In any event, as discussed herein, the deficiencies in the instant Complaint are such that the Court would reach the same conclusion even if the Court had liberally construed the Complaint.

## ANALYSIS

### I. Whether the Complaint is Frivolous or Malicious

The Court first considers whether Plaintiff's Complaint is "frivolous or malicious."  28 U.S.C. § 1915(e)(2)(B)(i).  A complaint is malicious "if it was filed with the 'intention or desire to harm another.'"  *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (citations omitted).  A complaint is legally frivolous if it fails to establish standing or subject matter jurisdiction.  *Castillo v. Marshall*, 107 F.3d 15 (9th Cir. 1997) (mem.) (quoting *Pratt v. Sumner*, 807 F.2d 817, 819 (9th Cir. 1987)).

As an initial matter, the Court finds no indication that Plaintiff's Complaint was "filed with

the intention or desire to harm another." *Id.* Accordingly, because the Complaint's express averments do not indicate any intent or desire to harm another, and the context of the lawsuit carries no indicia that the case is malicious, dismissal is not warranted on that basis.

However, the Court finds that Plaintiff's Complaint is frivolous under § 1915(e)(2)(B)(i) because the Complaint fails to sufficiently allege subject matter jurisdiction such that dismissal is appropriate.

As an initial matter, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction[.]" *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331; and (2) diversity jurisdiction under 28 U.S.C. § 1332.

The instant Complaint expressly invokes this Court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332. [Dkt. 1 at ¶ 50 ("This Court has jurisdiction under 28 U.S.C. § 1332 as this is a federal diversity matter under the business tort law of the State of California and the amount is well above the $75,000 jurisdictional limit.")].

A federal district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332.

With regard to diversity of citizenship, Plaintiff alleges that he is "a U.S. citizen physically overseas in the Philippines," that "Facebook is the defendant," and that "Facebook's headquarters are in Menlo Park, California." [Dkt. 1 at ¶¶ 3, 51]. These allegations are legally deficient in several ways.

First, Plaintiff alleges that he is "a U.S. citizen physically overseas in the Philippines." *Id.* at ¶ 3. However, diversity of citizenship exists only between "citizens of a State or subjects of a foreign state[.]" 28 U.S.C. § 1332(a)(2). Plaintiff's Complaint does not allege that Plaintiff is a citizen of any State within the United States, and his allegations fail to show that he is either a citizen or a "subject" of the Philippines (or any other foreign state). *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (For individuals, citizenship is determined by a person's "domicile," which is the home where he or she resides with the intention to remain or to

which he or she intends to return.); *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) ("[A] resident of a foreign country is not necessarily a citizen thereof."); *OrthoTec, LLC v. IKarl Global SDN BHD*, No. CV 21-4085 PA (SKx), 2021 WL 6103351, at *2 (C.D. Cal. Oct. 21, 2021) (dismissing complaint for failure to adequately plead diversity jurisdiction, where the complaint alleged only that the defendant was "an individual residing in Kuala Lumpur, Malaysia, and Bangladesh").

Second, as to Defendant Facebook, the Complaint alleges only that "Facebook is the defendant" and that "Facebook's headquarters are in Menlo Park, California." [Dkt. 1 at ¶ 51]. However, the Complaint does not allege what type of entity "Facebook" is (*e.g.,* corporation, limited liability partnership, or limited liability company). A corporation is a citizen of both its state of incorporation and the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). By contrast, a limited liability company or limited partnership is a citizen of every state of which its owners/members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens."). The Complaint does not state whether "Facebook" is a corporation, a partnership, or some other legally recognized entity, much less identify the legal basis for alleging the citizenship of that entity. Therefore, because the Complaint alleges only that "Facebook is the defendant" and that "Facebook's headquarters are in Menlo Park, California," the Complaint does adequately allege the citizenship of the named Defendant. *See Kanter*, 265 F.3d at 857 ("Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties."); *see also Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 F. App'x 62, 64 (9th Cir. 2011) (holding allegations insufficient to establish complete diversity, where the complaint alleged that no member of a defendant limited partnership (LP) was "an Oregon citizen" without identifying the actual state of citizenship of the LP's members or whether the members were composed of another layer of business entities); *Landers v. Ford Motor Co.*, No. CV 23-915 PA (PVCx), 2023 WL 4291535, at *1 (C.D. Cal. Feb. 10, 2023) ("Because the Complaint alleges only the

'residence' of Plaintiffs, and alleges that Defendant is a limited liability company, but does not identify the members of Defendant, or the citizenship of those members, and instead alleges Defendant's citizenship as if it were a corporation, the Complaint does not adequately allege the citizenship of any party.").

Accordingly, the Complaint's allegations fail to adequately allege complete diversity between the Parties, and thus, fail to establish subject matter jurisdiction under § 1332.

As noted, subject matter jurisdiction may also be found where a case arises under federal law (*i.e.*, federal question jurisdiction). A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983)). However, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). If the complaint does not specify whether a claim is based on federal or state law, it is a claim "arising under" federal law only if it is "clear" that it raises a federal question. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

As noted, the Complaint explicitly asserts jurisdiction only on the grounds of diversity jurisdiction. *See* Dkt. 1 at ¶ 50 ("This Court has jurisdiction under 28 U.S.C. § 1332 as this is a federal diversity matter[.]"); *see also* Dkt. 1-1 (Civil Cover Sheet in which "Basis of Jurisdiction" is only the box checked "Diversity"). Here, the Complaint expressly alleges a claim under California state law for tortious interference with prospective business relationships. [Dkt. 1 at ¶ 41 ("This is a tort against my business relationships because Facebook is interfering with my employment, past, present, and future, by my law firm's business page on Facebook just like Indiana bans all disabled lawyers."), ¶ 50 ("[T]his is a federal diversity matter under the business tort law of the State of California.")]. Thus, the Complaint does not, on its face, raise a legal cause

5

1  of action under any federal statute or the Constitution. For these reasons alone, the plain reading
2  of the Complaint leads to the conclusion that there is no subject matter jurisdiction on the grounds
3  of federal question jurisdiction under § 1331.

4  The Court is cognizant that the Complaint makes various references to federal law. *See id.*
5  at ¶ 27 ("Facebook injured me using the wires across several states and foreign countries[.]"), ¶ 42
6  ("Facebook is assisting the Indiana Supreme Court, which is covered by the ADA Title II under
7  *Tennessee v. Lane*, to hurt me. That discrimination is the core of the tort here."), ¶ 43 ("Facebook
8  is retaliating against my ADA reform advocacy[.]"), ¶ 44 ("Employment discrimination is
9  prohibited. 28 C.F.R. § 35.140"), ¶ 47 ("Suspending my law firm page for talking about a state's
10 ADA violations must be considered a private entity cooperating with Indiana and acting as a state
11 agent, thus violating the First Amendment by oppressing my human rights views about Indiana.").

12 Construing Plaintiff's Complaint in the broadest sense possible, the Court analyzes
13 whether Plaintiff may be attempting to assert a federal civil rights claim under 42 U.S.C. § 1983.
14 That is, because Plaintiff alleges that Facebook may have violated his First Amendment rights by
15 suspending his law firm's Facebook page as a way to "oppress[] [his] human rights views about
16 Indiana," the Court turns to whether this passing reference to the First Amendment could be
17 properly and broadly construed to be a civil rights claim under § 1983. *Id.* at ¶ 47.

18 The short answer is no. A § 1983 claim involves an assertion that a "person" acting "under
19 color of" state law deprived another of rights secured by the United States Constitution or federal
20 law. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 175 (2023) ("[A]ny person
21 within the jurisdiction of the United States may invoke this cause of action against any other
22 person who, acting 'under color of ' state law, has deprived them of 'any rights, privileges, or
23 immunities secured by the Constitution and laws' of the United States."). "The under-color-of-
24 state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how
25 discriminatory or wrongful[.]" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)
26 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). There is no right to be free from the
27 infliction of constitutional deprivations by private actors. *Price v. Hawaii*, 939 F.2d 702, 707-08
28 (9th Cir. 1991) ("[P]rivate parties are not generally acting under color of state law, and we have

6

stated that '[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.'").

Private conduct is not considered governmental action unless "something more" is present. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924 (9th Cir. 2011) (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)). The conduct of a private actor constitutes state action only where there is "such a close nexus between the State and the challenged action" such that the private actor's conduct "may be fairly treated as that of the State itself," including "when the nominally private actor is 'controlled by an agency of the State, when it has been delegated a public function by the State, when it is entwined with governmental policies, or when government is entwined in its management or control.'" *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1150 (9th Cir. 2011) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001)).

Here, Plaintiff's passing reference to the First Amendment and conclusory allegations as to alleged cooperation with a state supreme court are insufficient to properly allege a civil rights claim against a private entity. At most, Plaintiff alleges that Facebook is "a private entity cooperating with Indiana and acting as a state agent[.]" [Dkt. 1 at ¶ 47]. As noted, the passing reference to the First Amendment is emblematic of the deficiency here: there is simply a failure to allege any specific facts to establish that Facebook was a state actor for purposes of § 1983. At best, there are conclusory allegations regarding Facebook's "cooperation" with the Indiana Supreme Court but those allegations do not demonstrate any of the factors required to show Facebook was a state actor for purposes of § 1983. *Price*, 939 F.2d at 707-08; *Moore v. City of San Fernando*, No. ED CV 22-1871-DMG (SHK), 2023 WL 2559218, at *2 (C.D. Cal. Jan. 3, 2023) ("[I]f Plaintiff wishes to bring suit against a private actor under Section 1983, he must explain why that private actor should be considered a person acting under color of state law. . . . [T]he mere allegation that a private party was acting under color of state law does not make it so."). There are insufficient pleadings to allege that Facebook was in any way controlled by the Indiana Supreme Court, that the Indiana Supreme Court delegated any duties to Facebook, or that the Indiana Supreme Court was in any way intertwined with Facebook's management. *Chudacoff*,

7

649 F.3d at 1150.  This should not be a surprise, because, as noted, the express pleading of the Complaint invokes diversity jurisdiction and does not explicitly attempt to invoke federal question jurisdiction under § 1983.  *See* Dkt. 1 at ¶ 50; Dkt. 1-1.  While the Court has generously construed the Complaint as broadly as possible, the conclusory pleading here is simply insufficient to allege that Facebook was a state actor for purposes of § 1983.  *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("The relationship between the state and the private actor which establishes state action must be pled in some detail.").

As noted, the Complaint also make passing reference to Title II of the ADA.  [Dkt. 1 at ¶¶ 42-44, 47].  Again, viewing the Complaint's allegations in the broadest possible light, the Court turns to whether this passing reference to the ADA and the term "discrimination" could be properly and broadly construed to be an ADA claim.  As with the deficiencies in alleging a § 1983 claim discussed above, here again the short answer is no.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  By its express terms, Title II "applies only to public entities."  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  A "public entity" includes "any State or local government," or "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131.

Here, Plaintiff alleges that "Facebook is assisting the Indiana Supreme Court, which is covered by ADA Title II under *Tennessee v. Lane*, to hurt me."  [Dkt. 1 at ¶ 42].  By this explicit pleading, Plaintiff identifies the Indiana Supreme Court as being covered by the ADA, but does not plead that Facebook is subject to the ADA.  Again, taking the broadest possible interpretation of the Complaint, even if Plaintiff were somehow attempting to assert an ADA claim against Facebook, the Complaint has not alleged specific facts suggesting that Facebook was a "public entity" within the meaning of Title II.  *See Poulson v. Bread & Roses*, No. 2:24-cv-06694-AB-JDE, 2024 WL 4957627, at *4 (C.D. Cal. Sept. 18, 2024) ("Plaintiff has not alleged that 'Bread and Roses' or any defendant was a public entity or an entity operating a program or activity

8

1  receiving Federal financial assistance. As such, no claim is stated under Title II of the ADA or the
2  Rehabilitation Act."). There are no allegations that Facebook is a public entity in any way or that
3  it operates in any way using federal funding, and thus, insufficient allegations that Facebook is
4  subject to Title II the ADA. Again, this should not be a surprise, because as noted the express
5  pleading of the Complaint invokes diversity jurisdiction and does not explicitly attempt to invoke
6  federal question jurisdiction under the ADA. *See* Dkt. 1 at ¶ 50; Dkt. 1-1. Plaintiff's conclusory
7  allegations that Facebook was "cooperating with Indiana and acting as a state agent" do not suffice
8  for purposes of alleging that Facebook is somehow a public entity under Title II of the ADA.

9       Accordingly, the Court finds that Plaintiff has failed to allege any causes of action which
10 might invoke this Court's federal question jurisdiction under § 1331.

11      As a result, for all the foregoing reasons, the Court determines that Plaintiff's Complaint is
12 subject to dismissal as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), for failure to
13 adequately plead subject matter jurisdiction.

14 **II.    Whether the Complaint Fails to State a Claim for Relief**

15      The Court next considers whether the Complaint should be dismissed for failure to state a
16 claim for relief. 28 U.S.C. § 1915(e)(2)(B)(ii).

17      "The standard for determining whether a plaintiff has failed to state a claim upon which
18 relief may be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure
19 12(b)(6) standard for failure to state a claim." *Watison*, 668 F.3d at 1112 (citing *Lopez*, 203 F.3d
20 at 1127). "The Rule 12(b)(6) standard requires a complaint to contain sufficient factual matter,
21 accepted as true, to state a claim to relief that is plausible on its face." *Wilhelm v. Rotman*, 680
22 F.3d 1113, 1121 (9th Cir. 2012) (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual
23 allegations are not required but "[t]hreadbare recitals of the elements of a cause of action,
24 supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*
25 *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading must "contain either direct or
26 inferential allegations respecting all the material elements necessary to sustain recovery under
27 *some* viable legal theory." *Twombly*, 550 U.S. at 562 (citation omitted) (emphasis in original).
28      Here, Plaintiff's allegations fail to plausibly state a claim for relief. Plaintiff's fundamental

basis for this lawsuit is that Facebook suspended his law firm's Facebook page "without good reasons" and "without any evidence that [Plaintiff] violated any policy." [Dkt. 1 at ¶ 18].  Plaintiff alleges that Facebook's action amounts to tortious conduct because it constitutes unlawful "retaliation" for Plaintiff's complaints regarding ADA violations committed by the Indiana Supreme Court (Plaintiff's previous employer). *Id.* at ¶¶ 37, 43.  The Complaint's express legal basis for this sole asserted cause of action is the California state law governing tortious interference with prospective business relationships. *Id.* at ¶¶ 41, 50.

Under California law, the elements of the tort of intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003).

As to the third element ("intentional acts on the part of the defendant"), the California Supreme Court has held that "a plaintiff seeking to recover damages for interference with prospective economic advantage must plead and prove as part of its case-in-chief that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Id.* at 950 (citation omitted).  Thus, "the third element also requires a plaintiff to plead intentional *wrongful* acts on the part of the defendant designed to disrupt the relationship." *Id.* at 950-51 (emphasis in original).  As the California Supreme Court has made clear:

> An act is not independently wrongful merely because [the] defendant acted with an improper motive. . . . The tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct. . . . [A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.

*Id.* at 953-54 (citations omitted).  Finally, as to the intent element of the tort, the California Supreme Court has held that "[w]hile a plaintiff may satisfy the intent requirement by pleading

10

specific intent, i.e., that the defendant desired to interfere with the plaintiff's prospective economic advantage, a plaintiff may alternately plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Id.* at 951.

To satisfy the first element of a tortious interference claim, a plaintiff must allege an actual economic relationship or a protected expectancy with a third party, not merely a hope of future transactions. *Id.* at 957; *see also Muddy Waters, LLC v. Superior Ct.*, 62 Cal. App. 5th 905, 926 (Cal. App. 2021). To show an economic relationship, "the cases generally agree that it must be reasonably probable the prospective economic advantage would have been realized but for [the] defendant's interference." *Youst v. Longo*, 729 P.2d 728, 733 (Cal. 1987).

Here, the foundation of Plaintiff's allegation is that Facebook's suspension of his Facebook.com webpage injured his prospective relationship with potential clients for his legal services as a lawyer "licensed" to practice before the United States Court of Appeals for the Fourth Circuit. *See* Dkt. 1 at 1, 5. More specifically, Plaintiff alleges that Facebook's actions at issue caused "permanent injury" to his "prospective business relationships" with "millions of people." *Id.* at 1. Plaintiff further alleges that Facebook's actions: (1) "interfer[ed] with [Plaintiff's] employment, past, present, and future," (2) "stripped [him] of the ability to fellowship with others of like mind and comment to them about [his] own struggles," (3) "stripped [him] of clients targeted to [him] and his resume by the Facebook system," including "disabled clients who may wish to have [his] services in South Carolina, North Carolina, Virginia, West Virginia, and Maryland," and (4) "stripped [him] of a valuable professional networking service for no good reason." *Id.* at ¶¶ 22, 27, 36, 41.

The Court finds that these allegations fail to plausibly show any actual economic relationship that existed between Plaintiff and any identified or specific third party. Plaintiff cannot rely on vague, conclusory allegations to state a claim for relief. *See Olson v. World Fin. Grp. Ins. Agency, LLC*, No. 24-cv-00477-EJD, 2024 WL 3498572, at *4 (N.D. Cal. July 19, 2024) ("[A]bsent some allegations regarding an existing relationship between *GFI* and some third party, GFI has not plausibly alleged the first element to state a claim for tortious interference with economic advantage."); *Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998994, at *7

11

(N.D. Cal. May 6, 2019) (holding allegations insufficient to state claim for tortious interference with prospective business relations, where the complaint made only "sweeping generalizations lacking any detail about the loss of prospective business opportunities").

Further, the Complaint fails to allege that Facebook knew of any economic relationship between Plaintiff and any third party. *See Johnson v. Meta Platforms, Inc.*, No. 22-cv-05691-BLF, 2023 WL 5021784, at *4 (N.D. Cal. Aug. 4, 2023) (dismissing tortious interference claim for failure to allege that the defendant knew about any particular relationships between the plaintiff and third parties and noting that the defendant's "general awareness that [the plaintiff's] Instagram account was a business account does not satisfy the second element of a tortious interference claim").

The Complaint also fails to allege that any existing economic relationship between Plaintiff and a third party was actually disrupted. *See First Am. Cinema, LLC v. Chicken Soup for the Soul Ent., Inc.*, No. CV 19-9577 PSG (GJSx), 2020 WL 11025582, at *6 (C.D. Cal. Mar. 12, 2020) (dismissing tortious interference claim where plaintiff failed to allege "specific economic relationships that were disrupted"). The Complaint only alleges that Plaintiff had vague aspirations to represent potential clients before the Fourth Circuit, without alleging any actual disruption of any such potential client engagements.

The Complaint also fails to allege that Facebook itself engaged in any separately wrongful conduct. As noted, a complaint must allege that the defendant's conduct was "wrongful by some legal measure other than the fact of interference itself." *Korea Supply*, 63 P.3d at 950. As discussed above, the Complaint does not sufficiently allege that Facebook is subject to either a § 1983 claim or an ADA claim. Facebook's decision to suspend Plaintiff's Facebook.com webpage is, as alleged, the result of a commercial entity pursuing commercial objectives and there is no allegation that the complained-of acts are proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard (separate from the alleged tort itself). *Id.* at 953-54.

Finally, as to the intent element, the Complaint nowhere alleges that Facebook had the specific intent to interfere with Plaintiff's prospective economic relationships. Nor does the

12

Complaint allege that Facebook knew that the alleged interference was certain or substantially certain to occur as a result of its action. *Id.* at 954. As discussed above, there is no allegation that Facebook even knew of any of Plaintiff's potential clients, which explains why the Complaint does not allege that Facebook knew that its actions were either certain or substantially certain to disrupt those prospective economic relationships.

Accordingly, the Court finds that Plaintiff has failed to allege the requisite elements of a cause of action for intentional interference with prospective economic relationships. And as detailed above, the Complaint fails to plausibly allege any other legally cognizable claim for relief.

The Court is cognizant that Plaintiff styled his pleading to assert a claim for "tortious" interference, without expressly stating whether the cause of action is for intentional interference or negligent interference. However, the Complaint is replete with allegations that Facebook somehow "retaliated" against Plaintiff for his alleged speaking out on ADA issues. *See, e.g.*, Dkt. 1 at ¶ 43. As noted above, the Complaint also contains conclusory and vague assertions that Facebook was "cooperating" with or "assisting" the Indiana Supreme Court. *Id.* at ¶ 42. The actions complained-of ("retaliating" and "assisting") are intentional acts, and for these reasons, the express language of the Complaint makes clear that the cause of action is for intentional interference by Facebook. For example, it is difficult to imagine how a defendant could "negligently" retaliate against a plaintiff

In any event, for completeness and giving Plaintiff every benefit of the doubt, the Court addresses whether the broadly construed Complaint adequately states a claim for negligent interference with prospective economic advantage. The short answer, again, is no.

Under California law, "[t]he tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence

13

caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786 (Cal. Ct. App. 1997); *see also Chung v. Intellect Soft Grp. Corp.*, No. 21-cv-03074-JST, 2022 WL 20184655, at *8 (N.D. Cal. July 13, 2022).

As is apparent, the first two elements of this tort overlap with the elements for intentional interference. And for the same reasons discussed above, the Complaint does not adequately allege any actual economic relationship that existed between Plaintiff and any identified or specific third party; fails to allege that Facebook knew of any economic relationship between Plaintiff and any third party; and fails to allege that any existing economic relationship between Plaintiff and a third party was actually disrupted (whether by negligence or otherwise). Accordingly, even construing the Complaint broadly, the Court finds that Plaintiff has failed to plausibly state a cause of action for negligent interference with prospective economic advantage.

For all these reasons, the Court finds that Plaintiff has failed to plausibly allege a claim for relief. Therefore, Plaintiff's Complaint is also subject to dismissal on that basis, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. Whether Defendant is Immune from Monetary Relief

While the Court finds that the Complaint must be dismissed under the first two prongs of § 1915(e)(2)(B) as discussed above, for completeness the Court turns to the third prong of the statute. Under the mandatory screening statute, the final inquiry is whether the Complaint seeks monetary relief against defendants who are immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(iii).

Here, Plaintiff seeks money damages from a private entity, Facebook, for alleged tortious conduct in connection with Plaintiff's Facebook account. There is nothing in the pleading to suggest that Facebook is immune from such relief.

Accordingly, the Court determines that Plaintiff's Complaint satisfies the "immunity" prong for purposes of § 1915(e)(2)(B)(iii).

**CONCLUSION**

For all the reasons set forth herein, **IT IS ORDERED THAT:**

1. Plaintiff's Complaint [Dkt. 1] is **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915(e)(2)(B), as frivolous, and for failure to state a claim for relief.

2. Plaintiff is **GRANTED LEAVE** to file an amended complaint that addresses the issues discussed herein by no later than **October 8, 2025**.

3. If Plaintiff does not file an amended complaint by the ordered deadline or if he files an amended complaint that fails to cure the identified deficiencies, that may result in negative consequences for this case, including but not limited to a recommendation by this Court that this action be dismissed with prejudice, either in whole or in part.

4. Plaintiff is **ADVISED** that there are several resources for *pro se* litigants. The Court makes available a guide for *pro se* litigants called *Representing Yourself in Federal Court: A Handbook for Pro Se Litigants*, which provides instructions on how to proceed at every stage of a case, including discovery, motions, and trial. This guide is available electronically online at https://www.cand.uscourts.gov/wp-content/uploads/2020/02/Pro_Se_Handbook_2020ed_links_12-2021_MBB.pdf or in hard copy form free of charge from the Clerk of Court's Office. The Court additionally has a webpage with resources for *pro se* litigants: https://www.cand.uscourts.gov/pro-se-litigants/. In addition, Plaintiff has the option to seek assistance from the Legal Help Center by making an appointment by telephone at (415) 782-8982 or by email at fedpro@sfbar.org. The Legal Help Center is a free service provided by the Justice & Diversity Center of the Bar Association of San Francisco ("JDC"), and is not part of the United States District Court. The Legal Help Center is staffed by attorneys employed by the JDC to provide information and limited-scope legal assistance to *pro se* litigants in civil cases. *See* https://cand.uscourts.gov/about/court-programs/legal-helpdesks/.

5. The Court further **ADVISES** that the amended complaint shall include the caption and civil case number used in this Order (3:24-cv-08625-PHK) and the words "FIRST AMENDED COMPLAINT" shall be written on the caption page. The Court recommends

15

that Plaintiff use this Court's form complaint (available on the Court website) for drafting the amended complaint. The Court notes that the Complaint does not conform to the requirements for "Papers Presented for Filing" in Civil Local Rule 3-4, and admonishes Plaintiff to comply with the Local Rules for any future filings and submissions.

6. Because an amended complaint completely replaces the previous complaint, Plaintiff **SHALL** include in his amended complaint all claims he wishes to present, all defendants he wishes to sue, and all relief sought. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). The amended complaint **SHALL NOT** incorporate material from the prior complaint by reference.

7. Plaintiff **SHALL** comply with all of this Court's Orders (including all General Orders and the undersigned's Standing Orders, available on the Court's website) and all deadlines required by the Federal Rules of Civil Procedure and the Local Rules of this Court, in a timely fashion. When needed, Plaintiff may file a motion (prior to a deadline) requesting an extension of time to meet a court-ordered deadline. In order to be granted, any such motion **SHALL** show good cause why there exists a need for a reasonable amount of additional time to complete the necessary tasks.

8. Failure to file an amended complaint by the deadline herein and failure to prosecute this action timely may result in negative consequences for Plaintiff's case, including recommendation for dismissal of this action under Federal Rule of Civil Procedure 41(b) for failure to prosecute.

**IT IS SO ORDERED.**

Dated: September 8, 2025

PETER H. KANG
United States Magistrate Judge